Filed 6/16/23  In re M.A. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re M.A., a Person Coming Under the Juvenile Court Law. | B316326 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> R.A. et al., <br><br> Defendants and Appellants. | Los Angeles County Super. Ct. No. 21CCJP03185 <br><br> ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING <br> [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed on May 18, 2023, be modified as follows:

1.     On page 10, the second full paragraph is deleted, and the following is inserted in its place:

"Father concedes his appeal is moot to the extent it challenges the jurisdictional findings and removal order.  However, he contends his challenge to his status as an alleged father is not moot because a paternity finding could have practical benefits for M.A.  He argues that, although it is not clear which state's laws will apply to any distribution of his assets,

a declaration from a California court that he is M.A.'s legal parent "should assist this child in asserting any rights he has as Father's heir." Therefore, father argues, this court's decision would help ensure M.A. enjoys all the relevant financial and other benefits available to him as father's child."

2. The paragraph beginning at the bottom of page 10 and continuing to the top of page 11 is deleted, and the following is inserted in its place:

"Contrary to father's contentions, the fact that a favorable decision could have tangential positive benefits for M.A. does not render his appeal not moot. Nor does it provide a sufficient reason to exercise our inherent discretion to decide father's appeal on the merits, despite its mootness. While we acknowledge it is possible a finding that father is M.A.'s presumed parent could be useful to proving M.A.'s status as his heir, father has not shown the finding itself would entitle M.A. to any financial benefits or offer the child any other concrete relief; that such a finding *could* be helpful in the future is far too speculative. Nor has father shown the juvenile court's finding that he is an alleged parent, if left to stand, would harm M.A. in any way. Tellingly, M.A. has not asked us to decide father's appeal, despite father's contention that it would benefit the child. Accordingly, we decline to exercise our inherent discretion to overlook the mootness issue."

Appellant M.P.'s petition for rehearing, filed on June 1, 2023, is denied.

There is no change in the judgment.

_____
EGERTON, J.                  EDMON, P. J.                  LAVIN, J.

2

Filed 5/18/23  In re M.A. CA2/3 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re M.A., a Person Coming Under the Juvenile Court Law. | B316326 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. No. 21CCJP03185 |
| Plaintiff and Respondent, | |
| v. | |
| R.A. et al., | |
| Defendants and Appellants. | |

APPEALS from orders of the Superior Court of Los Angeles County, Tamara Hall, Judge.  Affirmed, dismissed.

Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant R.A.

Sean Angele Burleigh, under appointment by the Court of Appeal, for Defendant and Appellant M.P.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

---

Mother R.A. and father M.P. appealed after the juvenile court took jurisdiction over their child, M.A., and removed him from their custody. The court found mother used drugs while pregnant with M.A. and has unresolved mental health issues. Mother admitted using drugs, but she insisted she had not known she was pregnant until the day she gave birth.

On appeal, mother and father challenge the sufficiency of the evidence supporting the court's jurisdictional findings and dispositional orders, and father additionally challenges the court's finding that he is an alleged, rather than presumed, father. Unfortunately, father passed away while his appeal was pending. Accordingly, we dismiss his appeal as moot. As to mother's appeal, we affirm the court's findings and orders.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Background*

The Los Angeles County Department of Children and Family Services (Department) received a report that mother had tested positive for marijuana and benzodiazepines after giving birth to M.A. in June 2021. One of the nurses said mother showed signs of " 'very active bi-polar' " disorder. According to the nurse, mother paced and did not respond to the staff's directions related to M.A.'s care. Mother refused to hold M.A. the way the nursing staff had directed her, remarking, " '[H]e's my baby, I know him, I know what he likes.' " At one point, mother covered herself and the child with a scarf. Hospital staff told

2

mother not to put the scarf over M.A., because he had been born with respiratory issues.  Mother nevertheless continued to do so.

Mother told the Department she met father in New York, and they had unprotected sex in October 2020.  Mother moved to California the next day.  Father remained in New York.

Mother claimed she had not known she was pregnant—and had not suspected she was pregnant—until the day she gave birth.  Mother believed she had stopped menstruating due to stress, rather than pregnancy.  Mother provided the Department a photograph from May 2021, which she insisted showed she had no visible signs of pregnancy.  A social worker who viewed the photo, however, said mother had a visible "baby bump" and appeared pregnant.

Two months before giving birth, mother told maternal great aunt that she had stopped menstruating.  Maternal great aunt responded that mother was probably pregnant.  After the conversation, mother made an appointment with an OBGYN. The night before the appointment, she started feeling " 'a lot of stress' " and decided not to go.  Mother said she would become anxious whenever she thought about being pregnant, which she attributed to a prior unsuccessful pregnancy.

Mother said she started having severe abdominal pain two days before M.A.'s birth.  She thought she was constipated, so she ate a psychedelic mushroom, which had relieved her constipation in the past.  Mother ate a mushroom the day before and the day of M.A.'s birth.  The pain, however, intensified, so mother eventually went to the hospital.

Mother admitted using marijuana during her pregnancy to treat chronic pain.  However, she denied knowing why she had tested positive for benzodiazepines, and she speculated that it

may have been caused by "facial cleansing." According to a nurse, a positive test result for benzodiazepines is usually a sign of narcotics use.

Mother reported she had been hospitalized twice for psychiatric issues in 2013. Doctors prescribed her lithium after the first hospitalization, but she stopped taking it because she did not believe she had mental health issues. Mother was hospitalized another time in Turkey, which she described as an " 'accident.' " According to mother, she had been mistaken for a Ukrainian sex worker. Mother said the hospitalizations were the result of misunderstandings, and she insisted she does not have bi-polar disorder. She said she does not believe in traditional therapy and instead talks to friends who are " 'healers.' "

Mother had been living with maternal grandparents while pregnant, but she agreed to move out of their house so the grandparents could care for M.A. Mother also agreed to participate in drug and alcohol testing, enroll in a substance abuse program, and undergo a mental health assessment. Mother said she would stop using marijuana because she wanted to breastfeed M.A. She would instead rely on ibuprofen and " 'natural foods' " to treat her pain.

Father, who lived in New York, told the Department he assumed M.A. is his child. Maternal uncle had called father a month before mother gave birth and told him she was pregnant. Father said there were pictures of mother showing she was pregnant, but mother insisted she was not. Father believed mother denied being pregnant so she could continue using marijuana and drinking alcohol. He said he was aware mother had used cocaine, marijuana, and alcohol in the past.

4

Father said mother has "loving intentions," but her mental health can be unstable. According to father, mother had been hospitalized twice in the United States for mental health reasons. At one point, she went to France to avoid being hospitalized again. Mother told him she had been prescribed medication, but she did not take it.

Maternal grandmother claimed she did not know mother was pregnant until the day she gave birth. She said mother had gained weight, but did not appear to be pregnant. The family questioned mother many times about whether she was pregnant given her stomach growth, but mother always denied it. The day before mother gave birth, maternal grandmother gave her money, which mother used to purchase marijuana and mushrooms.

According to maternal grandmother, mother had been diagnosed with bi-polar disorder. She was hospitalized twice in New York and once in Turkey for mental health issues. Maternal grandmother said mental health issues ran in her family; maternal uncle and maternal great grandmother had been diagnosed with schizophrenia.

Maternal grandfather reported that mother had a "bump" on her stomach, but she had denied being pregnant. He said that, although mother had been diagnosed with bi-polar disorder, she refused to accept her diagnosis and would not take medicine to treat it. He thought she needed intensive mental health services.

## 2. *Dependency proceedings*

The Department filed a petition asserting M.A. is a person described by Welfare and Institutions Code section 300,

subdivision (b).[1]  As to mother, the Department alleged two bases for jurisdiction:  (1) mother has a history of substance abuse and used psychedelic mushrooms, benzodiazepines, marijuana, and alcohol while pregnant with M.A.; and (2) mother has a history of mental and emotional problems—including bi-polar disorder and general anxiety—yet refused to take medication or participate in consistent mental health treatment.  As to father, the Department alleged he failed to protect M.A. from mother's substance abuse.

The court held a detention hearing on July 14, 2021, at which it found father to be an alleged father.  The court detained M.A. and ordered mother not to breastfeed the child.  Father, however, photographed mother breastfeeding M.A. two days after the hearing.  Maternal grandparents asked father not to report that fact to the Department.

In August 2021, the San Bernardino County Department of Behavioral Health assessed mother for substance abuse services and determined she did not meet the criteria for treatment.  Mother reportedly told the assessor she did not "use any kind of drugs, prescribed or illegal.  I have no desire to use any form of substance."  Mother enrolled in a different substance abuse program, along with a parenting class.  She consistently tested negative for drugs, with one "no show," and received positive feedback from her counselor.

The Department of Mental Health evaluated mother and determined she was not eligible for services.  Tri City Mental Health also assessed mother, but it did not recommend any services.  Mother provided the Department paperwork stating

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

6

her " 'mental health condition does not meet the medical necessary criteria to be eligible for specialty mental health services.' " According to maternal grandmother, mother had been "parading paperwork that indicates" she does not have a mental health diagnosis.

On September 16, 2021, mother sent a social worker an extremely long text message purporting to explain her positive test for benzodiazepines. According to the text message, around three years earlier, mother discovered father had put medication in her coffee. Mother went through father's cabinets and found "a bottle hidden way in the back of an empty cabinet at the very top with a very long name which rings the bell to this benzodiazepine." Mother then explained that she recently learned her uncle had also secretly put medication in her aunt's food. The social worker remarked that the text message was an example of mother's tangential thinking.

### 3. *Jurisdiction and disposition hearing*

The court held a combined jurisdiction and disposition hearing on October 26, 2021. At the hearing, mother urged the court to dismiss the petition. She argued her history of substance abuse did not pose a current risk of harm because she had been open about her past drug use and does not currently abuse any substances. Mother pointed to her negative drug test results as proof that she was willing and able to stop using drugs. Mother also argued there was insufficient evidence that she suffered from any mental health issues. She relied on the fact that she was denied mental health services, as well as the lack of direct evidence of a diagnosis. Mother alternatively asked that M.A. be returned to her custody on the condition that she live with

7

maternal grandparents, who would be able to "provide an extra set of eyes."

The court sustained the petition and took jurisdiction over M.A. The court found mother has unresolved substance abuse issues, and that she was not credible when she claimed not to know she was pregnant. The court also found father knew mother was using drugs while pregnant, yet he did nothing to try to protect the child. As to mother's mental health issues, the court found she suffers from bipolar disorder, yet she refused treatment and self-medicated with alcohol and drugs.

Turning to disposition, the court removed M.A. from his parents' custody. The court denied father's request for a "home of parent" placement, noting he is merely an alleged father and it would be detrimental to release M.A. to his custody. The court also rejected mother's argument that living with maternal grandparents would be sufficient to protect M.A. "based on the evidence and the [jurisdictional] findings that the court has already made."

Mother and father timely appealed.

## DISCUSSION

### 1. *Father's appeal is moot*

In his opening brief on appeal, father challenged the juvenile court's jurisdictional findings and removal order, as well as its finding that he is an alleged, rather than presumed, father. In its respondent's brief, the Department noted the latter issue appears to be moot because the court had since placed M.A. with father. Nevertheless, the Department indicated it did not object to this court directing the juvenile court to enter an order finding father to be M.A.'s presumed father. After the Department filed

8

its brief, father passed away, and the Department moved to dismiss his appeal as moot.[2]

"'An appeal becomes moot when, through no fault of the respondent, the occurrence of an event renders it impossible for the appellate court to grant the appellant effective relief. [Citations.]'" (*In re Anna S.* (2010) 180 Cal.App.4th 1489, 1498; see *In re D.P.* (2023) 14 Cal.5th 266, 276 (*D.P.*).) "For relief to be 'effective,' two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*D.P.*, at p. 276.) Speculative future harm is not sufficient to avoid mootness. (*Id.* at p. 278.)

Even when a case is moot, a court has inherent discretion to reach the merits of the dispute. (*D.P., supra*, 14 Cal.5th at p. 282.) In deciding whether to exercise that discretion, "a court should be guided by the overarching goals of the dependency system: 'to provide maximum safety and protection for children' with a 'focus' on 'the preservation of the family as well as the safety, protection, and physical and emotional well-being of the child.'" (*Id.* at p. 286.) Courts generally will exercise discretion to review a moot case when it presents an issue of broad public interest that is likely to recur, the controversy between the parties may recur, or a material question remains for the court to determine. (*Id.* at p. 282.) In dependency cases, additional relevant factors include whether the challenged findings could be prejudicial, affect other dependency proceedings, or are based

---

[2] We grant the Department's February 8, 2023 motion to take judicial notice of juvenile court records that document father's death. (See Evid. Code, §§ 452, subd. (d), 459.)

9

on particularly pernicious or stigmatizing conduct. (See *id*. at pp. 285–286.)

Because father passed away while his appeal was pending, the juvenile court's findings and orders are no longer causing him harm. As a result, even if we were to grant father the relief he requested, the relief would not be *effective*. Accordingly, father's appeal is moot, and we dismiss it as such. (See *In re A.Z.* (2010) 190 Cal.App.4th 1177, 1181 [a father's death rendered moot his appeal of a juvenile court's order terminating his parental rights].)

Mother concedes that father's appeal is moot to the extent it challenges the jurisdictional findings and removal order. However, she contends father's challenge to his status as an alleged father is not moot because a paternity finding could have practical benefits for M.A. She argues that, although it is not clear which state's laws will apply to any distribution of father's assets, a declaration from a California court that father is M.A.'s legal parent "should assist this child in asserting any rights he has as Father's heir." Therefore, she argues, this court's decision would help ensure M.A. enjoys all the relevant financial and other benefits available to him as father's child.

Contrary to mother's contentions, the fact that a favorable decision could have tangential positive benefits for M.A. does not render father's appeal not moot. Nor does it provide a sufficient reason to exercise our inherent discretion to decide father's appeal on the merits, despite its mootness. While we acknowledge it is possible a finding that father is M.A.'s presumed parent could be useful to proving M.A.'s status as his heir, mother has not shown the finding itself would entitle M.A. to any financial benefits or offer the child any other concrete

10

relief; that such a finding *could* be helpful in the future is far too speculative. Nor has mother shown the juvenile court's finding that father is an alleged parent, if left to stand, would harm M.A. in any way. Tellingly, neither father's counsel nor M.A. has asked us to decide father's appeal. Accordingly, we decline to exercise our inherent discretion to overlook the mootness issue.

**2.** ***Substantial evidence supports the court's jurisdictional findings as to mother***

Mother contends the juvenile court's jurisdictional findings related to her substance abuse and mental health issues are not supported by substantial evidence.

    a. *Relevant law and standard of review*

"In dependency proceedings, the social services agency has the burden to prove by a preponderance of the evidence that the minor who is the subject of the dependency petition comes under the juvenile court's jurisdiction. [Citations.] We review the jurisdictional findings for substantial evidence. [Citation.] We consider the entire record, drawing all reasonable inferences in support of the juvenile court's findings and affirming the order even if other evidence supports a different finding. [Citation.] We do not consider the credibility of witnesses or reweigh the evidence. [Citation.] Substantial evidence does not mean 'any evidence,' however, and we ultimately consider whether a reasonable trier of fact would make the challenged ruling in light of the entire record. [Citation.] The parent has the burden on appeal of showing there is insufficient evidence to support the juvenile court's order." (*In re Isabella F.* (2014) 226 Cal.App.4th 128, 137–138.)

Section 300, subdivision (b)(1) authorizes dependency jurisdiction where "[t]he child has suffered, or there is a

substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [t]he failure or inability of the child's parent or guardian to adequately supervise or protect the child . . . [or] to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."  Because the statute permits jurisdiction "only so long as is necessary to protect the child from risk of suffering serious physical harm or illness" (*id*., subd. (b)(3)), the evidence must show the child faces a current risk of serious physical harm. (See *In re J.N.* (2010) 181 Cal.App.4th 1010, 1023.)

Thus, section 300, subdivision (b) requires a showing of "concrete harm or risk of physical harm to the child." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820–821.)  "As appellate courts have repeatedly stressed, ' "[s]ubdivision (b) means what it says.  Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence indicating that the child is exposed to a *substantial* risk of *serious physical harm or illness.*" ' " (*In re Jesus M.* (2015) 235 Cal.App.4th 104, 111.)  "The purpose of a dependency proceeding is to protect the child, rather than prosecute or punish the parent." (*In re Emily L.* (2021) 73 Cal.App.5th 1, 15.)

b.    *Mother's substance abuse*

Generally, a parent's substance abuse, "without more," is an insufficient basis to assert dependency jurisdiction.  (*In re L.W.* (2019) 32 Cal.App.5th 840, 849.)  Rather, the Department must show the parent's substance abuse harms the child or places the child at substantial risk of harm.  (*In re Drake M.* (2012) 211 Cal.App.4th 754, 766–767 (*Drake M.*), disapproved of on other grounds by *D.P., supra*, 14 Cal.5th at pp. 282–283; see *L.W.*, at p. 850 [mother engaged in dangerous behavior due

12

to substance abuse placing child at risk of harm].) However, when a child is " 'of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety,' " a "finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm." (*Drake M.*, at pp. 766–767.)

*In re Christopher R.* (2014) 225 Cal.App.4th 1210 (*Christopher R.*) is instructive. In that case, the juvenile court took jurisdiction over a child after finding the mother had used cocaine while pregnant. The Court of Appeal affirmed, reasoning the mother's repeated use of cocaine, including while pregnant, qualified as substance abuse for purposes of section 300, subdivision (b) because it constituted recurrent substance use that resulted in her failure to fulfill a major role obligation. (*Christopher R.*, at p. 1218.) Further, the court concluded the mother's "use of cocaine during the last months of her pregnancy confirmed her poor judgment and willingness to endanger her children's safety due to substance abuse." (*Id.* at p. 1219.)

Here, there is overwhelming evidence that mother used marijuana, psychedelic mushrooms, and benzodiazepines while pregnant with M.A. As mother seems to concede, her use of those substances constituted substance abuse for purposes of section 300, subdivision (b)(1). (See *Christopher R.*, *supra*, 225 Cal.App.4th at pp. 1218–1219.) Because M.A. was of "tender years" as of the jurisdiction hearing, mother's substance abuse is prima facie evidence of her inability to provide regular care resulting in a substantial risk of harm to the child. (*Ibid.*; see *Drake M., supra*, 211 Cal.App.4th at p. 767.) Moreover, as in *Christopher R.*, mother's drug use "during the last months of

her pregnancy confirmed her poor judgment and willingness to endanger her [child's] safety due to substance abuse." (*Christopher R.*, at p. 1219.)

Mother insists that, despite her past drug use, there is insufficient evidence of a risk of harm to M.A. as of the jurisdiction hearing. In support, she points out she was open about her past drug use, promised not to use drugs in the future, consistently tested negative for drugs, voluntarily enrolled in a treatment program, and had completed several classes with positive feedback.

Contrary to mother's contentions, there is sufficient evidence from which the court reasonably could have found her substance abuse continued to pose a substantial risk of harm to M.A. Although mother admitted using some drugs while pregnant, she was not entirely forthcoming with the Department. Mother, for example, repeatedly denied using benzodiazepines, despite testing positive for the drug shortly after giving birth. Rather than admit her use of the drug, mother concocted bizarre and implausible explanations for the positive test, including that it was the result of "facial cleansing" and that father had secretly drugged her. On appeal, mother speculates the test might have been the result of medication given to her at the emergency room. While that is certainly possible, the record does not compel such a finding. In fact, a nurse failed to mention it as a possibility when asked what might have caused the positive test result.

Mother further minimized the severity of her substance abuse issues by insisting she had not known she was pregnant, an assertion that strains credulity. The record shows that after having unprotected sex with father, mother stopped menstruating and gained significant weight in her midsection.

14

Mother's family members repeatedly questioned her about whether she was pregnant, and mother went so far as to make an appointment with an OBGYN. On this record, the juvenile court reasonably rejected mother's contention that she was not aware she was pregnant.

The court also reasonably could have concluded mother's participation in services was not sufficient to alleviate the risk of harm to M.A. Although mother tested negative for drugs several times, she was a "no show" for one test, which the court could have presumed was because she would have tested positive. (See *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1384 ["a missed drug test, without adequate justification, is 'properly considered the equivalent of a positive test result' "].) Mother also told a substance abuse program assessor she did not "use any kind of drugs, prescribed or illegal. I have no desire to use any form of substance." Given mother had recently been unable, or unwilling, to abstain from using substances during her pregnancy, the juvenile court reasonably could have concluded this was a lie.

Mother's reliance on *In re J.A.* (2020) 47 Cal.App.5th 1036 is misplaced. In that case, the court determined jurisdiction was improper where a mother used edible marijuana to treat her pregnancy symptoms after having researched it was a relatively safe alternative to other medications. (*Id.* at p. 1038.) Here, the record does not show mother believed her drug use during pregnancy was safe. Instead, she simply denied being pregnant, a claim the juvenile court reasonably rejected. Therefore, as compared to *J.A.*, mother's substance abuse reflects a significantly more severe deficiency in judgment and willingness to endanger her child's safety.

15

*In re Rebecca C.* (2014) 228 Cal.App.4th 720 is also readily distinguishable. In that case, the court concluded the Department failed to produce sufficient evidence that the mother's substance abuse posed a risk of harm to her daughter, who was a teenager. (*Id.* at pp. 722, 727–728.) Here, M.A. was four months old at the time of the jurisdiction hearing. Therefore, unlike in *Rebecca C.*, mother's substance abuse is prima facie evidence of her inability to provide regular care resulting in a substantial risk of physical harm, and the Department was not required to present additional evidence on the issue.

c. *Mother's mental health issues*

Mother argues the court's jurisdictional findings related to her mental health issues are not supported by substantial evidence. She concedes there is evidence that she had "outstanding mental health issues such as bipolar disorder," but she argues there is not sufficient evidence that those issues posed a risk of harm to M.A. In support, she points to evidence that she had appropriate visitations with the child, sought out mental health services, and submitted to substance abuse testing.

As a general matter, when a juvenile court asserts jurisdiction over a minor based on multiple grounds " 'a reviewing court can affirm the . . . court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction . . . is supported by substantial evidence.' " (*Drake M., supra,* 211 Cal.App.4th at p. 762.) As the jurisdictional findings related to mother's substance abuse support jurisdiction over M.A., we " 'need not consider whether . . . the other alleged statutory grounds for jurisdiction are supported by the evidence.' " (*Ibid.*)

16

Nevertheless, out of an abundance of caution, we consider the merits of mother's arguments related to her mental health issues.

Contrary to mother's contentions, there is substantial evidence of a direct link between her mental health issues and a risk of harm to M.A. The court, for example, reasonably could have concluded mother used drugs during her pregnancy in order to self-medicate. The court also reasonably could have found mother's mental health issues led her to forgo prenatal care, which placed M.A. at substantial risk of harm. Indeed, mother told a social worker she cancelled an appointment with an OBGYN because she was experiencing too much stress and anxiety. Mother also reported that she became anxious whenever she thought about being pregnant, which would help explain her decision to forgo prenatal care.

The juvenile court also reasonably could have concluded mother had not sufficiently addressed her mental health issues as of the jurisdiction hearing. The record shows mother has a long history of severe mental health issues, which resulted in at least three hospitalizations. Despite this, mother insisted she did not suffer from mental health issues and refused to take prescribed medication. While it is true that mother had recently been denied mental health services, the court reasonably could have determined it was because she had failed to disclose her extensive history of mental health issues to the service providers.

Mother's reliance on *In re James R.* (2009) 176 Cal.App.4th 129 is misplaced. In that case, the mother had a history of mental instability, but there was no evidence she had abused or neglected her children. (*Id*. at p. 136.) Here, in contrast, the record supports a finding that mother's mental health issues caused her to self-medicate with drugs while pregnant and forgo

17

prenatal care, both of which placed M.A. at substantial risk of physical harm. Accordingly, there is a direct link between mother's mental health issues and a risk of harm to M.A.

Mother's reliance on *In re A.L.* (2017) 18 Cal.App.5th 1044 is similarly misplaced. In *A.L.*, the children were significantly older than M.A.: one child was 15 years old and the other was 11. (*Id.* at pp. 1045–1046.) The children also lived with their father, who was able to protect and care for them while their mother was experiencing mental health issues. (See *id.* at p. 1047.) Here, in contrast, M.A. was of tender years and entirely dependent on mother for his care. As a result, mother's unresolved mental health issue posed a significantly greater risk of harm than in *A.L.*

### 3. *Substantial evidence supports the court's order removing M.A. from mother's custody*

Mother argues the court's order removing M.A. from her custody is not supported by substantial evidence because there was no risk of harm to the child as of the disposition hearing. In support, mother points out that she repeatedly tested negative for drugs, underwent mental health assessments, participated in a substance abuse treatment program and parenting class, and was consistently appropriate during visits.

When a minor has been adjudged a dependent child of the court under section 300, the juvenile court may limit the control to be exercised over the dependent child by the parent or guardian. (§ 361, subd. (a).) A dependent child may not be taken from the physical custody of the parent with whom the child resides unless the juvenile court finds by clear and convincing evidence that there is a "substantial danger to the physical health, safety, protection, or physical or emotional

18

well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected" without removal.  (*Id.*, subd. (c)(1); see *In re Ashly F.* (2014) 225 Cal.App.4th 803, 809–810 (*Ashly F.*).) " 'The court may consider a parent's past conduct as well as present circumstances.' " (*In re John M.* (2012) 212 Cal.App.4th 1117, 1126.)  " 'A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent.' " (*In re Francisco D.* (2014) 230 Cal.App.4th 73, 83.)

When reviewing findings that must be proved by clear and convincing evidence, "the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true.  Consistent with well-established principles governing review for sufficiency of the evidence, in making this assessment the appellate court must view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996; see also *In re Jasmon O.* (1994) 8 Cal.4th 398, 423.)  The appellant has the burden of showing there is insufficient evidence to support the juvenile court's findings or orders.  (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420.)

Here, substantial evidence supports the court's removal order.  As discussed above, the record shows mother has a long history of substance abuse and mental health issues.  As a result of those issues, she exposed M.A. to a substantial risk of harm by

19

forgoing prenatal care and using benzodiazepines, marijuana, and psychedelic mushrooms while pregnant. Although mother was somewhat candid about her past drug use and voluntarily participated in services, she continued to insist—despite overwhelming evidence to the contrary—she did not struggle with substance abuse or mental health issues. Mother also downplayed the extent of her prior substance abuse—and the risk of harm it posed to M.A.—by making the preposterous claim that she had not known she was pregnant. On this record, the court reasonably could have concluded that, until mother acknowledges and addresses her substance abuse and mental health issues, there is a substantial risk to M.A.'s health, safety, and well-being while in her custody. (See *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["[o]ne cannot correct a problem one fails to acknowledge"].)

Mother contends removal was improper because the court could have ordered her to reside with maternal grandparents, who would have ensured M.A.'s safety. Relatedly, mother argues the court failed to comply with section 361, subdivision (e), which states a juvenile court "shall make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home." We reject both contentions.

Contrary to mother's suggestions, the court expressly found there were no reasonable means to protect M.A. without removing him from her custody. The court also expressly rejected mother's argument that ordering her to live with maternal grandparents would be sufficient to protect the child. That decision is supported by substantial evidence. In arguing otherwise, mother overlooks that she lived with maternal

grandparents while pregnant with M.A., yet she continued to use drugs and forwent prenatal care.  In fact, maternal grandmother admitted giving mother money to buy drugs when she was near full-term and visibly pregnant.  The record also shows mother continued to breastfeed M.A. after the court had ordered her not to, and maternal grandparents discouraged father from reporting that fact to the Department.  Given M.A.'s need for constant care, mother's willingness to violate court orders, and maternal grandparents' inability to control mother's behavior, the juvenile court reasonably could have concluded ordering mother to live with maternal grandparents would not be sufficient to protect the child.

Mother relies upon *Ashly F., supra*, 225 Cal.App.4th 803, to argue the juvenile court failed to consider reasonable means short of removal; however, the case is inapposite.  In reversing the disposition order, the *Ashly F.* court concluded the undisputed evidence contradicted the juvenile court's finding because "the court was required to 'consider, as a reasonable means to protect the minor, the option of removing an offending parent . . . from the home,' " and "[n]othing in the record shows that the court considered this option even though the evidence showed that it was available." (*Id.* at p. 810.)  Here, in contrast, the court expressly considered, but rejected, returning M.A. to mother's custody on the condition that she live with maternal grandparents.  As discussed above, that finding is supported by substantial evidence.

Mother's reliance on *In re I.R.* (2021) 61 Cal.App.5th 510 is also misplaced.  In *I.R.*, the juvenile court removed the children following an incident of domestic violence between the parents. The Court of Appeal reversed, reasoning there was no longer a

21

risk to the children's safety because the parents had separated and had no plans to reunite.  (*Id*. at pp. 521–522.)  Here, the record supports the court's finding that mother failed to acknowledge meaningfully, let alone resolve, her substance abuse and mental health issues.  Accordingly, the risk to M.A. was still present as of the disposition hearing.

Mother alternatively argues the Department failed to comply with rule 5.690(a)(1)(B)(i) of the California Rules of Court, which requires the Department to include in its report a "discussion of the reasonable efforts made to prevent or eliminate removal."  We agree with the Department that mother forfeited this issue by failing to raise it below.  (See *In re M.V.* (2014) 225 Cal.App.4th 1495, 1508 ["courts have repeatedly held that a party's failure to object forfeits appellate review of the adequacy of—or the failure to prepare—mandatory assessment reports in juvenile proceedings"].)  Accordingly, we need not consider mother's arguments.

Regardless, even assuming the Department's report was insufficient, mother does not identify any reasonable efforts the Department could have taken to prevent removal, other than requiring that she live with maternal grandparents.  The court, however, expressly considered, and properly rejected, that option.  Under these circumstances, any failure to comply with California Rules of Court, rule 5.690(a)(1)(B)(i) was harmless.

**DISPOSITION**

We dismiss father's appeal.  We affirm the juvenile court's jurisdictional findings and dispositional orders as to mother.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:



EDMON, P. J.



LAVIN, J.